## A04A1304. JONES v. THE STATE.
(603 SE2d 73)

BLACKBURN, Presiding Judge.

Following the denial of his motion to withdraw his guilty pleas, Allen Jones appeals, maintaining that the trial court abused its discretion in denying his motion because his plea was neither intelligent nor voluntary but, instead, was the result of ineffective assistance of counsel. For the reasons set forth below, we affirm.

On October 15, 2002, in a four-count indictment (Case No. 02SC09048) arising out of a May 8, 2002 incident, Jones was indicted for aggravated assault,[1] aggravated sodomy,[2] burglary,[3] and theft by taking.[4] On that same day, he was also indicted for committing, on August 20, 2002, the crimes of rape,[5] aggravated sodomy, theft by taking, burglary, and cruelty to children in the second degree (Case No. 02SC09057). On October 22, 2002, he was charged in two more indictments. In Case No. 02SC09294, he was indicted for committing, on June 10, 2002, the crimes of rape, aggravated sodomy, aggravated assault, and burglary. In Case No. 02SC09295, arising out of a June 12, 2002 incident, he was indicted for aggravated sodomy, aggravated assault, burglary, aggravated sexual battery,[6] robbery by intimidation,[7] and sexual battery.[8]

On August 14, 2003, pursuant to a negotiated plea agreement, Jones entered pleas of guilty to three of the four indictments. In Case No. 02SC09048, he was sentenced to five years concurrent on the aggravated assault and aggravated sodomy counts, both sentences to run concurrently with the sentences in Case No. 02SC09057; the burglary and theft by taking counts were dead docketed. In Case No. 02SC09057, he was sentenced to 20 years on the rape count and ten years concurrent on the burglary count, with the aggravated sodomy,

---

[1] OCGA § 16-5-21.
[2] OCGA § 16-6-2.
[3] OCGA § 16-7-1.
[4] OCGA § 16-8-2.
[5] OCGA § 16-6-1.
[6] OCGA § 16-6-22.2.
[7] OCGA § 16-8-40 (a) (2).
[8] OCGA § 16-6-22.1.

theft by taking, and cruelty to children in the second degree counts dead docketed. In Case No. 02SC09295, Jones was sentenced to five years on the aggravated sodomy count and five years on the burglary count, sentences to run concurrently with each other but consecutive to the sentences in Case Nos. 02SC09048 and 02SC09057. The remaining aggravated assault, aggravated sexual battery, robbery by intimidation, and sexual battery counts were dead docketed. All counts in Case No. 02SC09294 were dead docketed.

Jones asserts that the trial court erred in denying his motion to withdraw guilty pleas, arguing that the pleas were not knowing, intelligent, and voluntary because he received ineffective assistance from his plea counsel.

1. "After sentence is pronounced, whether to allow the withdrawal of a guilty plea lies within the trial court's sound discretion, and we review the trial court's decision for manifest abuse of that discretion." *Weeks v. State*.[9] "On a motion to withdraw a guilty plea, the trial court is the final arbiter of all factual issues raised by the evidence." (Punctuation omitted.) *Caudell v. State*.[10]

> Where the validity of a guilty plea is challenged, the State bears the burden of showing that the plea was voluntarily, knowingly, and intelligently made. The State may do this by showing through the record of the guilty plea hearing that (1) the defendant has freely and voluntarily entered the plea with (2) an understanding of the nature of the charges against him and (3) an understanding of the consequences of his plea.

(Citation and punctuation omitted.) *Johnson v. State*.[11]

A review of the plea transcript shows compliance with the procedures required under Uniform Superior Court Rule 33 in order to establish that a guilty plea was knowing and voluntary. First, the State went through the individual indictments, relating the crimes charged in each count of the respective indictments, the minimum and maximum sentences which each crime carried, and the counts in the respective indictments which the State had moved to place on the dead docket. Jones indicated that he understood the various charges, the sentences each charge carried, and the counts the State intended to dead docket. He also indicated that he had gone over the charges with his attorney and had had adequate time to discuss the charges.

---

[9] *Weeks v. State*, 260 Ga. App. 129 (578 SE2d 910) (2003).
[10] *Caudell v. State*, 262 Ga. App. 44, 45 (1) (584 SE2d 649) (2003).
[11] *Johnson v. State*, 260 Ga. App. 897, 899 (1) (581 SE2d 407) (2003).

Jones next indicated that he understood that he had a right to a trial by jury and a presumption of innocence, as well as a right to remain silent, testify in his own behalf, subpoena witnesses, and cross-examine all the State's witnesses against him. In addition, he stated that he understood that he had a right to an attorney and, if found guilty, a right to appeal. He further stated that he understood that by entering a plea he was giving up those rights and would be sentenced by the judge. Jones denied that he was under the influence of any drug or alcohol, or that he had been threatened or coerced into entering a plea. He acknowledged that he was entering the plea freely and voluntarily. Finally, the State set out the factual bases for the plea.

At the conclusion of the State's presentation of the factual bases for the plea, the trial court itself again asked Jones if he understood that he had a right to a jury trial, saying, "We got a jury waiting to try you. You're the only case I have here today. You understand this?" Jones replied, "Yes, your Honor. I understand." Following additional questions about his understanding of his situation, the trial judge accepted Jones's plea. We find that the plea transcript supports the trial court's finding that Jones entered the plea voluntarily, knowingly, and intelligently.

2. "After the trial court accepts a plea based on these procedural safeguards, a defendant seeking to withdraw a plea must prove that withdrawal is necessary to correct a manifest injustice." (Punctuation omitted.) *Hill v. State.*[12] Jones argues that his case meets this standard because his guilty pleas were the result of ineffective assistance of counsel.

> The two-prong test established in *Strickland v. Washington*[13] to address claims that trial counsel was ineffective also applies to claims that a guilty plea attorney was ineffective. Accordingly, [Jones] was required to show that his counsel's performance was deficient and that, but for the deficiency, there was a reasonable probability he would not have pleaded guilty and would have insisted on going to trial. In addressing claims that counsel's performance was deficient, a court must determine whether counsel's advice was reasonable under the circumstances, and must apply the strong presumption that counsel's conduct fell within the wide range of reasonable professional conduct and that all of counsel's significant decisions were made in the exercise of

---

[12] *Hill v. State,* 267 Ga. App. 357, 358 (599 SE2d 307) (2004).
[13] *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

reasonable professional judgment. The trial court's determination that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous.

(Citations omitted.) *David v. State*.[14] Jones fails to satisfy either prong of the *Strickland* test.

The transcript of the hearing on the motion to withdraw the guilty plea supports the trial court's determination that Jones's guilty plea was not the result of ineffective assistance of counsel. First, Jones was aware that if he did not accept the plea offer of 25 years, he was facing the possibility of multiple life sentences. In return for his guilty plea, the State dead docketed nine counts against him. In addition, the trial court had denied Jones's motion to suppress a videotaped statement in which Jones confessed to all of the crimes with which he was charged. Further, Jones knew that similar transaction evidence would l e used against him and that all of the victims were prepared to testify for the State.

Trial counsel testified that he had represented Jones for about a year, that he had met with him on at least ten occasions, either in the courtroom or at the jail, and that he had discussed the case with him in depth, including spending four hours going over Jones's videotaped confession with him. He also spoke with Jones about possible defenses and went over each charge against Jones and the maximum sentence each carried; he discussed the effect of the similar transaction evidence and talked about multiple charges and consecutive sentencing. He investigated the case and spoke with all people necessary to prepare for Jones's trials. Trial counsel asserted that he was prepared to go to trial on the day Jones accepted the plea, but that he believed that it was in Jones's best interest to take the plea.

Trial counsel said that Jones had insisted that he wanted a trial until he saw his videotaped confession; he then changed his mind, though several days later he had again changed his mind and wanted to go to trial. Jones originally told trial counsel that he thought his son, who looked like him, had committed the crimes, and trial counsel tried to find his son, but Jones abandoned this defense after seeing the videotape. Trial counsel filed a motion to suppress and a motion to exclude similar transaction evidence and went over the discovery with Jones; he also asked him repeatedly if he was sure he wanted to go to trial because "I wanted to make certain he understood what a trial encompassed and understood the consequences should he be found guilty." Counsel's actions fall well within the wide range of reasonable professional conduct.

---

[14] *David v. State*, 261 Ga. App. 468-469 (1) (583 SE2d 135) (2003).

Jones contends that trial counsel pressured him into pleading guilty. He asserts that he had always insisted on going to trial and changed his mind about pleading guilty only after trial counsel brought his wife to the holding cell on the day of trial; when she told him that she would rather have him home after a few years rather than never again, he yielded and agreed to take the plea. Trial counsel, however, stated that Jones indicated that he wanted to see his wife and that the only time it could be arranged with the judge, because of the wife's employment, was on the day of the trial. Trial counsel told Jones that he had contacted his wife, that she was making every effort to meet him, and that he would have a chance to talk with her before trial. Trial counsel said that he "brought her in and explained to her what was going on and explained it to him with her present."

The trial court rejected Jones's claims of being pressured by counsel's bringing his wife to the holding cell, finding that it was "satisfied that Mr. Jones's opportunity to speak to his wife is consistent with the notion that an individual facing serious charges oftentimes wishes to have the opportunity to speak to loved ones in order to make an informed decision, as opposed to that being some form of coercion." "Duress is a question of fact for the trial court to resolve, whose decision we will only reverse if it constitutes an abuse of discretion." *Johnson v. State*, supra at 899 (1). Here, there was no abuse of discretion.

Jones asserts that he asked trial counsel to investigate the point of entry for the burglary in one of the cases and the circumstances surrounding fingerprints found in the apartment of the victim. Trial counsel testified that he would have had the picture of the point of entry made if they had gone to trial, since it could be done in a day, but that doing so was not high on his list of things to do. When asked why, trial counsel replied,

Well, given the fact that he had made a detailed statement of at least two of the cases of his point of entry, what he did, described things that weren't in evidence, I had to figure out a way to handle that confession because I believe that once he testified, once that confession came in where he was stating that he wished and deserved death for what he had done, I had to somehow nullify that or find a way so that the impact of that didn't just throw away the case altogether. His own testimony. That was my main concern in this case. The motion to suppress was denied, but I still had to argue the gap in the time, something to nullify or otherwise lessen the impact of his own words describing what had happened in at least two of the incidents.

As for the fingerprints, he said that he did not recall whether there was a match, but that he was prepared to argue that the fingerprints did not support the charge.

Jones claims that he informed his attorney that he was under the influence of marijuana at the time of his confession; he also told him that he had confessed because a police officer had threatened to go to his house with a search warrant and, "if I had any jewelry matching anything that was taken, . . . that he would arrest my wife, have my daughter taken away, and possibly shoot my dog." Trial counsel's testimony was that Jones was not under the influence of drugs or alcohol when he gave his confession; he stated that Jones told him that he was sober and clear-minded and had used marijuana the day before, and that the use of the marijuana "just wasn't close enough in time to be an issue." As to Jones's assertion that the police had threatened his wife, trial counsel told Jones: "Well, one, if you're saying you didn't do it, there are not going to be any items in the house. She's not under any type of danger. If there are items in the house and she didn't know about them, she's not in control of them, there's no way she knew or should have known the items were stolen. She's not in any danger." Again, we find nothing in these complaints to support a claim of ineffective assistance of counsel.

Jones also argues that trial counsel was ineffective for failing to explain the results of the DNA testing in the case. Trial counsel explained at the hearing that he had not gone into any detail about the DNA evidence because the evidence had come back as inconclusive and his argument, therefore, would be that "it wasn't him."

The trial court found that Jones had not received ineffective assistance of counsel. Based on the foregoing description of the very able efforts made on his behalf by trial counsel, the trial court did not clearly err in its ruling on this issue.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JULY 26, 2004.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney*, for appellee.